UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
NIKODEM WTULICH,
     Petitioner,
  - against -
MAGDA FILIPKOWSKA,
     Respondent.
----------------------------------------------------------X

MEMORANDUM
AND ORDER

16-CV-2941 (JO)

James Orenstein, Magistrate Judge:

  Petitioner Nikodem Wtulich ("Wtulich") seeks to have respondent Magda Filipkowska ("Filipkowska") return their daughter AW to Poland.[1] *See* Docket Entry ("DE") 1 (Petition); Convention on the Civil Aspects of International Child Abduction, done at the Hague on October 25, 1980 ("the Convention"), T.I.A.S. No. 11,769, at 1, 22514 U.N.T.S. at 98, *reprinted in* 51 Fed. Reg. 10493 (1986); International Child Abduction Remedies Act, 22 U.S.C. § 9001, *et seq*. On March 20, 2019, following a bench trial, I granted Wtulich's petition. *See Wtulich v. Filipkowska*, 2019 WL 1274694, at *11 (E.D.N.Y. Mar. 20, 2019) (findings of fact and conclusions of law). Filipkowska now seeks a new trial on the basis of what she claims is newly discovered evidence. *See* DE 76; Fed. R. Civ. P. 59(a)(2); Fed. R. Civ. P. 60(b)(2). She also seeks a stay pending her *pro se* appeal of the order that AW return to Poland. *See* DE 85; Fed. R. App. P. 8(a)(1). For the reasons set forth below, I deny both motions.

I.  <u>Background</u>

  I assume the reader's familiarity with the facts of this case as summarized in my earlier decision. In short, AW was born in Poland in 2008, and Poland remained her habitual place of residence at the time her parents last agreed about where she should live. In 2013, Wtulich consented to have Filipkowska take AW with her for a three-month trip to the United States to

---

[1] I refer to the parties' minor daughter by her initials to protect her privacy. *See* Fed. R. Civ. P. 5.2(a)(3).

attend a family wedding. Filipkowska has retained AW in this country ever since. She married after bringing AW to the United States, and she now and lives with her husband and AW in New Jersey, where AW attends school. AW's passport expired in 2015. As of the time of the bench trial, Filipkowska reported that neither she nor AW had lawful immigration status in this country, and that she was unable to obtain a green card for her daughter. *See Wtulich*, 2019 WL 1274694, at *1-2.

With the parties' consent, I presided at a bench trial of the matter on April 23-24, 2018. *See Wtulich*, 2019 WL 1274694, at *1; DE 44; DE 50; DE 51; DE 53 (trial transcript ("Tr.") pp. 1-58); DE 54 (Tr. pp. 59-145); 28 U.S.C. § 636(c). After receiving the parties' post-trial submissions, I granted Wtulich's Petition on March 20, 2019. I concluded that Wtulich had established that Filipkowska wrongfully retained their daughter in the United States in violation of the Convention and that Filipkowska had failed to establish that AW was "well-settled" in the United States in the pertinent legal sense, or that Wtulich had acquiesced to AW's remaining in the United States. *See* Wtulich, 2019 WL 1274694, at *11. The Clerk entered judgment on March 21, 2019. *See* DE 63.

Filipkowska now claims she is entitled to a new trial because there is new evidence that AW is "well-settled" in the United States for purposes of the Convention. She reports that she and AW obtained green cards and that she is now legally, gainfully employed. She also cites as new evidence certain emails between herself and Wtulich which she says demonstrate that Wtulich acquiesced to AW remaining in the United States. *See* DE 76-20 ("Memo. I") at 3-5.[2] In considering the motion I have reviewed the evidence Filipkowska submitted, Wtulich's opposing memorandum, and Filipkowska's reply memorandum. *See* DE 76-2 through DE 76-19 (exhibits); DE 77 ("Opp. I"); DE

---

[2] Filipkowska's supporting memorandum does not have its own page numbers; I use for ease of reference the page numbers assigned by the court's electronic docketing system.

79 (Reply); DE 80 (Filipkowska's supporting affidavit); DE 80-1 (Filipkowska's supplemental exhibit).

On June 26, 2019, Filipkowska filed a motion to stay AW's return to Poland pending the resolution of her appeal. *See* Fed. R. App. P. 8(a)(1); DE 85 (motion); DE 85-1 ("Memo. II"). Wtulich responded on June 28, 2019. *See* DE 87 ("Opp. II").

II. The Motion for a New Trial

    A. Applicable Law

Filipkowska seeks a new trial or entry of a new judgment under Rules 59 and 60 on the ground that a litigant may "seek a new trial based upon newly discovered evidence and any other reason justifying relief from the operation of a judgment after trial." Memo. I at 2 (citing *Ilardi v. Bechtel Power Corp.*, 106 F.R.D. 567, 570 (E.D.N.Y. 1985)).

A court may grant a new trial for "any reason for which a rehearing has heretofore been granted in a suit in equity in federal court." Fed. R. Civ. P. 59(a)(1)(B). Where, as here, the trial was not before a jury, the court may "open the judgment …, take additional testimony, amend findings of fact and conclusions of law or make new ones, and direct the entry of a new judgment." Fed. R. Civ. P. 59(a)(2). "Any such motion must be based upon manifest error of law or mistake of fact." *Burzynski v. Travers*, 111 F.R.D. 15, 17 (E.D.N.Y. 1986) (internal citations omitted). "[A] trial court should not grant a new trial merely because the losing party can probably present a better case on another trial." *Ball v. Interoceanica Corp.*, 71 F.3d 73, 76 (2d Cir. 1995). To the contrary, a court should order a new trial only if the "'refusal to take such action appears … inconsistent with substantial justice.'" *LiButti v. United States*, 178 F.3d 114, 118 (2d Cir. 1999) (quoting Fed. R. Civ. P. 61). Indeed, courts "routinely reject" such motions "in the absence of extraordinary circumstances." *New York v. Shinnecock Indian Nation*, 2008 U.S. Dist. LEXIS 9226, at *5-6 (E.D.N.Y. Feb. 7, 2008). Such

extraordinary circumstances exist if the court "overlooked any relevant facts or legal authority," if its factual findings or conclusions of law were erroneous, if there is a "supervening change in law," or if there is newly discovered evidence. *Saint v. United States*, 243 F.R.D. 50, 52 (E.D.N.Y. 2007). Filipkowska seeks a new trial on the latter ground.

Under both Rule 59 and Rule 60(b)(2), the standard for assessing a claim of newly discovered evidence is the same. *See Metso Minerals, Inc. v. Powerscreen Int'l Distrib. Ltd.*, 833 F. Supp. 2d 282, 293 (E.D.N.Y 2011), *rev'd on other grounds*, 526 F. App'x 988 (Fed. Cir. 2013); *Patel v. Lutheran Med. Ctr.*, 775 F. Supp. 592, 596 (E.D.N.Y. 1991). To succeed on a motion pursuant to Rule 60(b)(2), the movant bears the burden of showing:

> (1) the newly discovered evidence was of facts that existed at the time of trial or other dispositive proceedings, (2) the movant was justifiably ignorant of them despite due diligence, (3) the evidence is admissible and of such importance that it probably would have changed the outcome, and (4) the evidence is not merely cumulative or impeaching.

*United States v. Int'l Bhd. of Teamsters*, 247 F.3d 370, 392 (2d Cir. 2001) (internal citations omitted). Evidence that was clearly available at the time of the proceeding is not newly discovered. *See Pryor v. Berryhill*, 286 F. Supp. 3d 471, 474 (E.D.N.Y. 2017) (internal quotation omitted) (citing *Whitaker v. New York University*, 543 Fed. App'x 113, 114 (2d Cir. 2013)); *Sorenson v. Wolfson*, 2015 WL 4095197, at *3 (S.D.N.Y. July 7, 2015) (newly discovered evidence "must have been unknown to the movant at the time of trial, and the movant must have been excusably ignorant of the facts – meaning that the facts could not have been discovered by a diligent search") (internal citations omitted).

B. <u>Analysis</u>

1. <u>Post-Trial Developments: AW's Green Card and Filipkowska's Job</u>

Filipkowska and AW received green cards on approximately July 24, 2018. Memo I at 3; DE 76-2. In explaining her trial testimony that she and AW were unable to secure green cards, Filipkowska asserts "that she was misinformed by her immigration agency that a passport was

4

required to get AW a green card. It turns out that was a mistake[.]" Memo. I at 3. Filipkowska further claims that, since the conclusion of the trial, she has begun working legally, and her salary "has risen to approximately $60,000 per year." *Id.* at 5.

Filipkowska's evidence relating to the green cards and her higher salary fail the first element of the applicable test: namely, that newly discovered evidence must establish facts that existed at the time of trial. As Filipkowska acknowledges, AW obtained her green card more than three months after the trial ended. "At the time of the trial," as Filipkowska's counsel acknowledges, Filipkowska and "AW did not possess green cards." DE 76 ¶ 5.

The evidence of Filipkowska's higher salary likewise fails the test's first prong because it relates to a post-trial development. Filipkowska relies on a letter written in April 2019 describing a job that began in May 2018 – after the trial had already ended. *See* DE 80-1. That is not newly discovered evidence within the meaning of the applicable rule.

The evidence also fails the test's second requirement that Filipkowska's ignorance of the new evidence was justifiable. At the trial in 2018, Filipkowska testified that she had not even applied for a green card for AW because she had come to understand that doing so would be futile so long as AW lacked a valid passport. *See* Tr. at 94-95, 103-04, 110-11. She now contradicts that testimony and swears that she and her husband applied for AW's green card in 2017. *See* DE 76-5 (Filipkowska Affidavit) ("Filipkowska Aff.") ¶ 63. If this most recent statement is true, Filipkowska's ignorance of it at the time of the trial was inexplicable, let alone justifiable.

Even if the evidence of AW's green card and Filipkowska's employment qualified as newly discovered evidence, which they do not, such evidence is not "of such importance that it probably would have changed the outcome" of this case. *Teamsters*, 247 F.3d at 392 (internal citation omitted). "[T]he default presumption under the Convention" is that, in the absence of certain conditions, "a

5

child *shall* be returned to the state from which she originally was wrongfully removed." *Lozano v. Alvarez*, 697 F.3d 41, 51 (2d Cir. 2012) (emphasis in the original). AW's immigration status and Filipkowska's employment status were not the only reasons I granted Wtulich's petition, or even the predominant ones in determining whether AW should be allowed to remain in this country because she is settled here. *See Lozano*, 697 F.3d at 57 ("While courts have consistently found immigration status to be a factor when deciding whether a child is settled, no court has held it to be singularly dispositive."). I also considered the extent to which AW has been trapped in a drawn-out legal dispute since 2016 and AW's initial lack of a stable residence. *See Wtulich*, 2019 WL 1274694, at *8-9.

Finally, relying on the post-trial developments Filipkowska cites would ignore an important part of the analysis that led me to reject the defense that AW is settled in this country. That is, all of developments that have acclimated AW to life in the United States and made it easier for her to stay here spring from Filipkowska's wrongful retention of the child in violation of Wtulich's right to have her returned to Poland. Relying on Filipkowska's improved financial stability, or her post-trial success in obtaining a green card for AW, would frustrate the Convention's objective "to dissuade parents … from engaging in gamesmanship with a child's upbringing in order to secure an advantage in an anticipated custody battle." *Gitter v. Gitter*, 396 F.3d 124, 134 (2d Cir. 2005).

    2.   <u>Recently Submitted Emails</u>

Filipkowska also seeks a new trial on the basis of several email messages between herself and Wtulich that she claims to have discovered after the trial when her cousin Wojciech Kicak did some "troubleshoot[ing work on] her email system" and adjusted the "IMAP folder date filters settings[.]" DE 76-4 ("Kicak Aff.") ¶ 4. She contends that these "new" emails demonstrate that Wtulich "acquiesced to the child remaining in the United States," that he "made no mention of returning the child to Poland," and that he "had access to the child and visitation." Memo. I at 4. As explained

6

below, the emails on which Filipkowska relies (both those in her initial motion papers, and additional ones submitted with her Reply) are not newly discovered and, because they serve only to provide cumulative impeachment of Wtulich's testimony, would not have altered the outcome if admitted at trial.

Filipkowska's failure to introduce at trial the evidence on which she now relies is plainly the result of insufficient diligence. Filipkowska claims that her "IMAP folder date filters settings" precluded her from viewing and retrieving emails more than two years old. *See* Reply ¶ 9; Kicak Aff. ¶ 4. That assertion is at odds with the fact that Filipkowska did offer forty emails in evidence at trial, including several that were then more than two years old. *See, e.g.*, Respondent's Trial Exhibits ("Resp. Ex.") C, D, U-X. Even assuming that the "IMAP folder date filters settings" on Filipkowska's computer led her to find some emails but miss others until later, the problem was one Filipkowska easily resolved when she had her cousin work on the device and adjust a single setting. *See* Reply ¶ 9. Her failure to get such help while preparing for trial renders her claimed ignorance of the emails during the trial unjustifiable. *See Teamsters*, 247 F.3d at 392; *Opals on Ice Lingerie v. BodyLines, Inc.*, 425 F. Supp. 2d 286, 293 (E.D.N.Y. 2004) (finding that a litigant's "feeble efforts to locate" a document demonstrated a failure to exercise the due diligence required for relief). Equally unpersuasive is Filipkowska's argument that she asked Wtulich to produce in discovery the emails he had written to her, but that he instead provided emails she had written to him. *See* Reply ¶¶ 11-13. She did not seek discovery relief on that basis, and in any event she demonstrably had access to the emails and merely failed to exercise the diligence needed to access them.

Even if the emails could be considered newly discovered, which they cannot, they would not warrant a new trial because they are either inadmissible or merely impeaching. Of the hundreds of email messages Filipkowska submitted, she has provided English translations (from the original

7

Polish) of less than two dozen. *See* DE 76-6; DE 76-7; DE 76-8; DE 76-17; DE 76-18. I deem the remainder inadmissible for purposes of the new trial motion. *See Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 704-05 (S.D.N.Y. 2014) (striking trial exhibits "in Spanish, in whole or in part," which the defendant had "placed in the record *en masse*," and for which the defendant had "declined" to provide "complete, certified English translations"); *NV Petrus SA v. LPG Trading Corp.*, 2017 WL 1905820, at *1-2 (E.D.N.Y. May 8, 2017) (holding that Russian-language exhibits are inadmissible unless translated into English); *Regeda v. City of New York*, 2015 WL 5751117, at *2 n.2 (E.D.N.Y. Sep. 30, 2015) (citing *G. Simons & Co. S.A. v. New Bar of North America*, 2005 WL 1137348, at *7 (S.D.N.Y. May 13, 2005)) (finding the plaintiff's translation of an email written in Russian to be "inadmissible without a certification of translation ... and consequently not cognizable on summary judgment").[3] Several of the translated emails are among those presented at trial, albeit with slightly different, updated translations. *Compare* Resp. Ex. V *with* DE 76-18 at 5; *compare* Resp. Ex. W *with* 76-18 at 4. Some of them would have been inadmissible as settlement negotiations. *See*, *e.g.*, DE 76-18 at 2-3, 6; *see also* Fed. R. Evid. 408 (precluding admission of evidence of settlement offers to prove or disprove a disputed claim); *Sheng v. M&TBank Corp.*, 848 F.3d 78, 84 (2d Cir. 2017) (citing Rule 408).

Only one admissible email might be considered relevant to Filipkowska's argument that the "new evidence" would show Wtulich's acquiescence to AW's retention in the United States: on June 12, 2014, Wtulich wrote, "Nobody wants to force [AW] or you to stay in Poland and take away your passports." DE 78-16 at 5. However, this evidence is merely cumulative of similar evidence

---

[3] Filipkowska submitted additional translated emails in her Reply that were not admitted in evidence at trial. She purports to offer the evidence not to impeach Wtulich's trial testimony, but rather to demonstrate that he had as much access to AW in the United States as he did when she was in Poland. *See* Reply ¶¶ 24-32. The extent of Wtulich's access to AW, however, is manifestly irrelevant to the material inquiry into whether Filipkowska wrongfully retained AW in this country.

presented at trial that Filipkowska used as a basis for arguing that, contrary to his trial testimony, Wtulich consented to having AW remain in the United States. *See* Def. Ex. C; Def. Ex. D. As Wtulich testified, and as I discussed in my findings of fact, Wtulich did indeed say things that ran counter to his actions – including, as pertinent here, the fact that he did in fact prevent AW from renewing her passport and does seek to force AW to return to Poland – because he feared that Filipkowska would place AW beyond his reach if he did not placate her. *See* Tr. at 33-34; *Wtulich*, 2019 WL 1274694, at *9-10.

III. The Motion for a Stay Pending Appeal

Four factors are relevant to Filipkowska's motion for a stay pending appeal: whether she, as the movant, will suffer irreparable injury absent a stay; whether a party will suffer substantial injury if a stay is issued; whether she has demonstrated a substantial possibility, although less than a likelihood, of success on appeal; and the public interest. *See Haimdas v. Haimdas*, 720 F. Supp. 2d 183, 210 (E.D.N.Y. 2010) (citing *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). A stronger showing on one factor excuses a weaker showing on another. *See id.* (citing *Thapa v. Gonzales*, 460 F.3d 323, 334-35 (2d Cir. 2004)).

Filipkowska has not demonstrated a substantial possibility of success on appeal. She asserts that she will most likely win on the merits because "the child has strong bonds with the mother and the United States," she has received a green card, and Filipkowska's financial status drastically improved since trial. Memo II at 3-4. Such argument fails to challenge the finding that AW's place of habitual residence was Poland, that Filipkowska has retained AW in this country in violation of Wtulich's rights, and that Wtulich did not acquiesce to that retention. To the extent the argument suggests a challenge to my legal conclusion that AW is not cognizably settled in the United States, it fails to address the reasoning I provided for that conclusion. Moreover, to the extent that

9

Filipkowska relies for her appellate argument on evidence submitted after the trial, I conclude that such evidence will not be cognizable on appeal for the same reasons that I conclude above that it is not newly discovered. I therefore have no reason to conclude that there is a substantial possibility of success on appeal.

The factor of irreparable harm to the movant in the absence of a stay favors Filipkowska, but only to a limited extent. As a threshold matter, Filipkowska's assertion that AW will be irreparably harmed absent a stay is inapposite. The relevant factor for purposes of a stay pending appeal is harm to Filipkowska as the movant, not to her non-party child. I have already determined that "[t]he ordinary disruptions necessarily accompanying [repatriation] would not by themselves constitute [a risk of harm]." *In re Koc*, 181 F. Supp. 2d 136, 152 (E.D.N.Y. 2011) (internal citation omitted) (quoted in *Wtulich*, 2019 WL 1274694, at *8).

Moreover, the harm to AW about which Filipkowska expresses concern is a compound one, and Filipkowska makes no effort to analyze it. AW will undoubtedly find it difficult, after so many years in this country, to return to Poland. But it will likely be far worse for her to be forced to live there without her mother. I have ordered only the former, not the latter.[4] If, in the absence of a stay, Filipkowska chooses to stay in the United States rather than care for her daughter in Poland while the authorities there determine the parties' respective custodial rights, the resulting incremental harm to AW will flow from Filipkowska's decision rather than mine. Such potential harm to AW resulting from the movant's own decision is not a factor in deciding whether to grant a stay.

---

[4] This court can do no more under the Convention than determine whether to order AW's return to the place of her habitual residence; it is for that jurisdiction to make any decision about the parties' custodial rights. *See* Convention, art. 19 ("A decision under this Convention concerning the return of the child shall not be taken to be a determination on the merits of any custody issue."). As the Polish authorities have made no custody decision, Filipkowska would presumably – as Wtulich explicitly acknowledges – retain custody of AW if she returned to Poland with her. *See* Opp. II at 2.

I recognize, of course, that the choice between staying in the United States with her new husband and returning to Poland with her daughter is an extremely difficult one, and that being forced to make such a choice might be cognizable harm. But even that harm will not arise simply because I deny the motion for a stay; it will also be the result of Filipkowska's decisions to retain AW in this country unlawfully and then to marry while it remained a possibility that Wtulich would prevail in his effort to secure AW's return to Poland. The harm resulting from those decisions does not outweigh the other factors that favor denial of the motion to stay.

The factor of potential harm to a party arising from granting a stay plainly favors the denial of Filipkowska's motion. Wtulich has already incurred substantial injury by losing access to his daughter and continues to do so each day that she does not return to Poland.

Finally, it is in the public interest to deny the stay. Doing so upholds the goals of the Convention, which presumes AW's return. Indeed, "[s]taying the return of a child in an action under the Convention should hardly be a matter of course. The aim of the Convention is to secure prompt return of the child to the correct jurisdiction, and any unnecessary delay renders the subsequent return more difficult for the child, and subsequent adjudication more difficult for the foreign court." *Haimdas*, 720 F. Supp. 2d at 211 (quoting *Friedrich v. Friedrich*, 78 F.3d 1060, 1063 (6th Cir. 1996)). Granting a stay during the pendency of this appeal would effectively nullify the Convention by allowing one party to moot its remedial scheme by litigating a case until a wrongfully retained child reaches maturity.[5]

---

[5] To the extent Wtulich seeks to recover his attorney's fees in litigating the motion to stay, I will consider the matter in resolving his pending motion for the fees he incurred in this action.

IV.     Conclusion

For the reasons set forth above, I deny the respondent's motions for a new trial and for a stay of the judgment pending appeal.

SO ORDERED.

Dated:  Brooklyn, New York
        July 3, 2019

                                                            /s/
                                                    James Orenstein
                                                    U.S. Magistrate Judge