UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
NIKODEM WTULICH,                                    MEMORANDUM
                Petitioner,              AND ORDER
      - against -
MAGDA FILIPKOWSKA,                                  16-CV-2941 (JO)
                Respondent.
----------------------------------------------------------X

James Orenstein, Magistrate Judge:

Petitioner Nikodem Wtulich ("Wtulich") seeks an award of attorneys' fees and costs reasonably incurred in the successful prosecution of his petition for the return of his daughter AW to Poland. *See* Docket Entry ("DE") 73.[1] For the following reasons, I grant the motion in part and order respondent Magda Filipkowska ("Filipkowska") to reimburse Wtulich $19,699.47, consisting of $14,887.50 in reasonable attorneys' fees and $4,811.97 in compensable costs.

I.    <u>Background</u>

I assume the reader's familiarity with the facts of this case. Briefly stated, AW habitually resided in Poland, where her father Wtulich was exercising parental control, until Filipkowska wrongfully retained AW in this country. AW was never settled in the United States within the meaning of applicable law. *See Wtulich v. Filipkowska*, 2019 WL 1274694, *1-2 (E.D.N.Y. Mar. 20, 2019). Wtulich filed a petition under the pertinent treaty on June 7, 2016, seeking to have Filipkowska return AW to Poland. *See* DE 1 (Petition); Convention of Civil Aspects of International Child Abduction, done at the Hague on October 25, 1980 (the "Hague Convention"), T.I.A.S. No. 11,670, at *1, 22514 U.N.T.S. at 98, *reprinted in* 51 Fed. Reg. 10493; International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. § 9001, *et seq*.

---

[1] I refer to the parties' minor daughter by her initials to protect her privacy. *See* Fed. R. Civ. P. 5.2(a)(3).

In April 2018, I held a two-day bench trial, after which I granted Wtulich's petition and ordered Filipkowska to promptly return the parties' daughter to Poland, her habitual country of residence. *See* DE 53 (trial transcript) ("Tr."); DE 63 (Clerk's Judgment); *Wtulich*, 2019 WL 1274694, at *11. Wtulich now seeks, over Filipkowska's objections, payment of $22,252.00 in attorneys' fees and $20,842.12 in costs incurred in connection with his petition. *See* DE 73 ("Motion"); DE 74 (Filipkowska's declaration objecting to reimbursement) ("Filipkowska Decl.").[2]

II.  Discussion

  A.  Propriety of an Award

Having prevailed on his petition, Wtulich is entitled to an award of "necessary expenses … including travel expenses, … the costs of [Wtulich's] legal representation …, and those of returning" AW to Poland. *See* Hague Convention, Art. 26; T.I.A.S. No. 11,670, at *6-7. The rule serves both to restore Wtulich to the financial position he would have occupied but for Filipkowska's wrongful retention of their daughter and "to deter such conduct from happening in the first place." Hague Convention; Text and Legal Analysis, 51 Fed. Reg. 10494-01. ICARA further provides that such payment is mandatory unless the respondent establishes that an order awarding expenses "would be clearly inappropriate." 22 U.S.C. § 9007(b)(3). It is within the court's discretion to determine whether an award of necessary expenses is "clearly inappropriate." *See Ozaltin v. Ozaltin*, 708 F.3d 355, 375 (2d Cir. 2013) ("Absent any statutory guidance to the contrary, the appropriateness of such costs depends on the same general standards that apply when 'attorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion.'") (citing *Fogerty v. Fantasy, Inc.*, 510 U.S.

---

[2] After Wtulich moved for an award of fees and costs, Filipkowska moved for a new trial and to stay proceedings. *See* DE 76; DE 85. When I denied those motions on July 3, 2019, I wrote that if Wtulich wished to recover the fees and costs he incurred in litigating Filipkowska's post-trial motions, I would consider that request in resolving the instant motion. *See* DE 88 at 11 n.5. Wtulich has not sought any such supplemental relief and I therefore deem any such request waived.

517, 534 (1994)). Because "there is no precise rule or formula for making these determinations, … equitable discretion should be exercised in light of the relevant considerations." *Id.* Courts in this district have made such determinations "on a case-by-case basis." *See Haimdas v. Haimdas*, 2011 WL 13124276, at *1 (Aug. 29, 2011) (collecting cases).

It would not be clearly inappropriate to award Wtulich payment of necessary expenses in this case where "the case is not a 'difficult' one and 'falls squarely within the heartland of the Hague Convention.'" *Duran-Peralta v. Luna*, 2018 WL 1801297, at *2 (S.D.N.Y. Apr. 2, 2018); *cf. Ozaltin*, 708 F.3d at 375 (award was inappropriate where the respondent had a reasonable basis to believe that her actions were legal at the time of the removal at issue); *Onrust v. Larson*, 2015 WL 6971472, at *7 (S.D.N.Y. Nov. 10, 2015) (denying an award where the respondent had a credible basis to believe that petitioner had relinquished custody by the time of the removal at issue). Moreover, Filipkowska cites only the parties' differing financial circumstances as a basis to deny the award. *See* Filipkowska Decl. ¶ 9. While this court can of course consider the parties' respective financial circumstances in determining the propriety of an award, Filipkowska's argument is not that she faces any hardship in paying Wtulich's expenses, but rather only that he is better able than she to endure them. *See Haimdas*, 2011 WL 13124276, at *1 (citing *Poliero v. Centenaro*, 2009 WL 2947193, at *22 (E.D.N.Y. Sept. 11, 2009); *Kufner v. Kufner*, 2010 WL 431762, at *3-5 (D.R.I. Feb. 3, 2010)).[3] I accommodate

---

[3] Filipkowska notes that while she and her husband worked very hard to participate in this action, Wtulich had the financial means to travel from Poland to the United States for a period of years to litigate the case. *See* Filipkowska Decl. ¶ 9. That assertion is consistent with Wtulich's credible trial testimony that Filipkowska's parents similarly cited Wtulich's financial condition in July 2014, when they threatened to litigate his petition for years if he filed one. *See* Tr. at 49; *Wtulich*, 2019 WL 1274694, at *4. The fact that Wtulich was financially able to vindicate his rights, despite such an attempt to leverage the cost of litigation against him, does not render it inappropriate to require Filipkowska to reimburse his for the expenses he incurred in resisting her unlawful conduct. To the contrary, the cynicism of such a position makes it all the more just to award Wtulich reasonable fees and costs.

that argument not by finding an award clearly inappropriate – which it is not – but rather by ensuring that Filipkowska is required to reimburse Wtulich only for those fees and costs that he reasonably incurred in prosecuting his petition.

B. Fees

Courts in this circuit have used the "lodestar method" to assess a prevailing petitioner's request for fees under the Hague Convention. *See, e.g.*, *Duran-Peralta*, 2018 WL 1801297, at *1-2.[4] This method determines the "presumptively reasonable fee" by multiplying the reasonable hourly rate with the reasonable number of hours expended on a case. *See, e.g.*, *Kindle v. Dejana*, 308 F. Supp. 3d 698, 703 (E.D.N.Y. 2018). District courts have broad discretion, using "their experience with the case, as well as their experience with the practice of law, to assess the reasonableness" of each component of a fee award. *Fox Indus., Inc. v. Gurovich,* 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005) (quoting *Clarke v. Frank,* 960 F.2d 1146, 1153 (2d Cir. 1992)); *see also Lilly*, 934 F.3d at 234.

Wtulich seeks to compensate his attorneys at the following hourly rates: $450 for S. Michael Musa-Obregon ("Musa-Obregon") and $350 for each of Sergei Orel ("Orel"), and Peter Kapitonov ("Kapitonov"). *See* DE 73-1 (Billing Records). Such rates are higher than those that surrounding districts have approved in comparable cases. A reasonable hourly rate is the minimum rate a client would be willing to pay to litigate the case effectively. *See, e.g.*, *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008); *Sanguineti v. Boqvist*, 2016 WL 1466552, at *2 (S.D.N.Y. Apr. 14, 2016). Although there is a dearth of reported decisions in this district setting reasonable hourly rates in the context of Hague Convention

---

[4] I use the term "lodestar" only for ease of reference. *See Lilly v. City of New York*, 934 F.3d 222, 227-231 (2d Cir. 2019) (reaffirming the lodestar method as the long-standing approach to calculating attorney's fees in the Second Circuit and as endorsed by the Supreme Court); *see also Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166-67 (2d Cir. 2011) (describing the lodestar as producing a "presumptively reasonable fee" and noting that failure to calculate it as a starting point in determining a fee award is "legal error").

4

cases, courts in surrounding districts have generally approved hourly rates no higher than $425 for such litigation and have typically approved rates of $200 to $400, depending on the relevant attorney's experience. *See, e.g.*, *Duran-Peralta*, 2018 WL 1801297, at *2 (collecting cases); *see also Distler v. Distler*, 26 F. Supp. 2d 723, 727 (D.N.J. 1998) (awarding $350 per hour in Hague Convention cases for "very experienced" counsel with over 20 years of experience handling 165 cases under the convention). Consistent with these rates, I will award Wtulich reimbursement of his attorneys' fees at the following hourly rates: $400 for Musa-Obregon, and an hourly rate of $275 for Orel and $225 for Kapitonov.[5]

Wtulich seeks to compensate his attorneys for 63.5 hours of work, including 3.0 hours by Musa-Obregon, 1.5 by Orel, and 59.0 by Kapitonov. "A fee applicant bears the burden of demonstrating the hours expended and the nature of the work performed through contemporaneous time records that describe with specificity the nature of the work done, the hours, and the dates." *Fundora v. 87-10 51st Ave. Owners Corp.*, 2015 WL 729736, at *1 (E.D.N.Y. Feb. 19, 2015) (citing *N.Y. State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1147-48 (2d Cir. 1983)). "Descriptions of work recollected in tranquility days or weeks later will not do…. The records must be specific and detailed. Even if made contemporaneously, an entry 'Engaged on Jones case—8 hours' will not do." *Gortat v. Capala Bros*, 2014 WL 3818614, at *5 (E.D.N.Y. Aug. 4, 2014) (internal quotation marks omitted). In determining the number of hours for which fees should be

---

[5] According to online bar records and the attorneys' online profiles, Musa-Obregon has been admitted to practice in New York for over 25 years and is the head of the law firm that bears his name; Kapitonov has been admitted in New York for seven years and works at the same firm, and Orel is a sole practitioner who has been admitted in New Jersey for over eighteen years and was admitted to practice in this district *pro hac vice* in his capacity as "of counsel" to Musa-Obregon's firm. *See* Attorney Search, New York State Unified Court, www.nycourts.gov (last visited March 24, 2020); Attorney Search-NJ Courts, https://portalattysearch-cloud.njcourts.gov/prweb/ PRServletPublicAuth?AppName=AttorneySearch (same); Musa-Obregon & Associates, www. musa-obregon.com (same); DE 18.

awarded, the court should not compensate counsel for hours that are "excessive, redundant, or otherwise unnecessary." *See Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983) (citing *Copeland v. Marshall*, 641 F.2d 880, 891 (D.C. Cir. 1980)); *Bliven v. Hunt,* 579 F.3d 204, 213 (2d Cir. 2009).

Although the billing records submitted in this case include block billing entries – aggregating multiple tasks or times in one billing entry[6] – I find the time entries, nonetheless, sufficiently detailed to allow me to determine whether the hours claimed for the described work is reasonable. *See Olsen v. County of Nassau,* 2010 WL 376642, at *5 (E.D.N.Y. Jan. 26, 2010). Having reviewed the records, I find the claim for 63.5 hours of compensable work to be reasonable. I therefore conclude that Wtulich is entitled to an award of attorneys' fees in the total amount of $14,887.50 as summarized in the following chart.

|  | Hourly Rate | | Hours Worked | |
| --- | --- | --- | --- | --- |
| Professional | Claimed | Adjusted | Claimed | Adjusted Fee |
| Musa-Obregon | $450 | $400 | 3.0 | $1,200.00 |
| Orel | $350 | $275 | 1.5 | $412.50 |
| Kapitonov | $350 | $225 | 59.0 | $13,275.00 |
| Total | | | | $14,887.50 |

C.  Costs

Wtulich seeks reimbursement for $20,842.12 in costs, most of which he itemizes along with descriptions that explain how each expense was necessarily incurred to prosecute this action. *See* DE 73-2 ("Expenses").[7] The sum of the itemized expenses is actually $19,849.97; I attribute the $992.15

---

[6] Generally, block billing "makes it difficult if not impossible for a court to determine the reasonableness of the time spent on each of the individual services or tasks provided." *Bond v. Welpak Corp.*, 2017 WL 4325819, at *8 (E.D.N.Y. Sept. 26, 2017) (citing *Linde v. Arab Bank, PLC*, 293 F.R.D. 138, 142 (E.D.N.Y. 2013) (internal quotation marks omitted)).

[7] On April 29, 2019, Wtulich personally (not his attorney) sent the court an email asking for reimbursement of expenses described in an attached itemized list. That list included some items denominated in Polish zloty and others in U.S. dollars. *See* DE 72. By order of the same date, I reminded the parties to communicate with me only through counsel of record so long as they continued to enjoy such representation. The next day, Wtulich's counsel filed the instant motion; it
6

difference between that sum and the requested either to arithmetical error or a failure to document some expenses. In either case, I consider only the itemized expenses.[8]

I also consider for reimbursement only those itemized expenses for which Wtulich has provided sufficient documentary support. Wtulich has done so with respect to most of his itemized costs, but there are some exceptions. First, Wtulich seeks reimbursement of $9,700 for "Law Office Musa-Obregon, Hague Convention Petition, Agreements, litigation, trial, detailed bill from Law Office Musa-Obregon & Associates." Expenses at 1. To the extent the claimed amount includes legal fees, I have already awarded an appropriate amount. To the extent it seeks litigation costs, Wtulich has not submitted any itemization or supporting documentation. I therefore deny the request for reimbursement of that item.

Second, Wtulich claims $4,738 for "Law Office Robert Openchowski, Hague Convention Petition, Negotiations, Agreements, detailed bill from Law Office Robert Openchowski." *Id.* While Wtulich does include a document from one "R. Openhowski, Esq." – whose letterhead reflects both an office in Warsaw and a New York bar registration number[9] – with a balance of $4,737.50, that document is virtually all in Polish. *See id.* at 4. I am unable to determine the extent to which it represents contemporaneous billing records, the extent to which any claimed costs or fees are reasonable, or why attorney Openhowski has failed to provide Wtulich with an English-language itemization of his bill despite being admitted to the New York bar. I therefore deny reimbursement

---

included the itemized expenses denominated in dollars that Wtulich had submitted the day before but excluded the items denominated in zloty. I assume any request for the latter to be abandoned.

[8] I also exclude Wtulich's request to award the additional amounts set forth in his expense records that appear to calculate interest or inflation of the itemized expenses. *See* Expenses at 2. Wtulich neither adequately explains why he is entitled to that type of award nor provides sufficient calculations or support for the claimed amounts.

[9] Online bar registration records confirm that Robert Openhowski is currently admitted to practice in New York. *See* Attorney Search, New York State Unified Court, www.nycourts.gov (last visited March 24, 2020).

of this item. *See NV Petrus SA v. LPG Trading Corp.*, 2017 WL 1905820, at \*1-2 (E.D.N.Y. May 8, 2017) (holding that Russian-language exhibits are inadmissible unless translated into English); *Regeda v. City of New York*, 2015 WL 5751117, at \*2 n.2 (E.D.N.Y. Sept. 30, 2015) (citing *G. Simons & Co. S.A. v. New Bar of North America*, 2005 WL 1137348, at \*7 (S.D.N.Y. May 13, 2005)) (finding the plaintiff's translation of an email written in Russian to be "inadmissible without a certification of translation ... and consequently not cognizable on summary judgment").

Third, Wtulich provides no receipts or other supporting documents for his claim of $29.50 in transportation costs to attend the bench trial on April 23-24, 2018. However, he reasonably explains that the amount represents bus fare for which he was provided no bill. *See* Expenses at 17. I therefore order its reimbursement.

Finally, Wtulich has not provided documents supporting his claim for $600 as the cost of accommodations for four days before his return trip to Poland with AW. *See id.* at 46. He provides no explanation for this lapse (despite providing other lodging bills), and I therefore deny reimbursement of this item. *See E.D.T. ex rel. Adamah v. Tayson*, 2010 WL 4116666, at \*1 (E.D.N.Y. Oct. 19, 2010) (denying costs for which a petitioner failed to provide documentation).

I approve the remaining itemized expenses, all of which Wtulich has adequately documented. Wtulich reasonably incurred $1,484 in travel and accommodation costs to prepare for and prosecute the bench trial in April 2018. *See* Expenses at 9-11, 13-17. His request for $115.15 in PACER fees to monitor the litigation is similarly reasonable. *See id.* at 18-22. The remaining $3,187.37, including travel and accommodations for Wtulich's trips to the United States in 2014 are similarly reasonable, notwithstanding Filipkowska's objections. *See id.* at 23-25, 28-33, 37-38, 43; Filipkowska Decl. ¶ 10j-o. In reaching the latter conclusion, I credit Wtulich's trial testimony that he made such trips not simply to visit AW, as Filipkowska insists, but also to negotiate for her return to Poland without the need for litigation and to forestall the possibility that Filipkowska would abscond

with AW and make her unavailable for return. *See* Tr. at 16-17, 20-21, 33-34; *Wtulich*, 2019 WL 1274694, at *2, *6, *9-10. I therefore award Wtulich $4,811.97 in costs, as detailed below.

| Description | Amount |
| --- | ---: |
| Accommodations at Quality Inn Meadowlands from April 20-28, 2018 | $1,110 |
| Transportation from Newark Airport to Quality Inn Meadowlands on April 20, 2018 | $59.20 |
| Transportation from Quality Inn Meadowlands to Newark Airport on April 29, 2018 | $59.20 |
| Transportation from Quality Inn Meadowlands to attorneys' office on April 21, 2018 | $136.50 |
| Transportation from Quality Inn Meadowlands to EDNY on April 23, 2018 | $118.70 |
| Bus fare to trial, April 23-24, 2018 | $29.50 |
| PACER fees | $111.50 |
| Accommodations at YMCA from April 11-18, 2014 | $389.60 |
| Accommodations at B Hotel & Hostel for April 15, 2014 | $78.03 |
| Accommodations at Comfort Inn & Suites from April 18-24, 2014 | $306.37 |
| Accommodations at Comfort Inn & Suites from June 21-22, 2014 | $326.01 |
| Accommodations at Days Inn from July 12-21, 2014 | $1,515.68 |
| Accommodations at Days Inn from December 24-27, 2014 | $571.68 |
| Total | $4,811.97 |

IV. Conclusion

For the reasons set forth above, I grant the motion in part and order respondent Filipkowska to reimburse petitioner Wtulich $19,699.47, consisting of $14,887.50 in reasonable attorneys' fees and $4,811.97 in compensable costs.

SO ORDERED.

Dated: Brooklyn, New York
March 24, 2020

/s/
James Orenstein
U.S. Magistrate Judge